441 So.2d 1185 (1983)
SOUTHERN AMERICAN INSURANCE COMPANY
v.
Ronald DOBSON.
NORTHEASTERN FIRE INSURANCE COMPANY OF PENNSYLVANIA
v.
Ronald DOBSON.
No. 82-C-1583.
Supreme Court of Louisiana.
February 23, 1983.
On Rehearing November 4, 1983.
Rehearing Denied January 6, 1984.
Edwin Dunahoe, Thomas Dunahoe and Gregory, Natchitoches, for applicant.
Mark A. Goodwin, Mayer, Smith & Roberts, Shreveport, Russell L. Potter, Stafford, Stewart & Potter, Alexandria, for respondent.
Shirley Nassif, Robert E. Winn, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, amicus curiae, for Godfrey Jasmin.
BLANCHE, Justice.
We are called upon in this case to determine whether a commercial umbrella liability insurance policy is a policy of "automobile liability insurance" which under our uninsured motorist statute, specifically La. R.S. 22:1406(D)(1)(a), must provide uninsured motorist coverage. This question is res nova in Louisiana.
The facts are not in dispute. On April 9, 1978, Ronald Dobson was driving a truck owned by Dobson Pulpwood Company, Inc., when he was struck by a car owned and operated by an underinsured motorist. Ronald Dobson was severely injured as a result of the accident and sought to recover uninsured motorist insurance proceeds under three policies issued to Dobson Pulpwood. One of the policies was issued by Aetna Casualty and Surety Company (Aetna), another by Southern American Insurance Company (Southern), and the third by Northeastern Fire Insurance Company of *1186 Pennsylvania (Northeastern). All three policies were in effect on the date of the accident.
The policy issued by Aetna to Dobson Pulpwood is termed as an "Automobile Liability and Physical Damage Policy." It offers the insured coverage for bodily injury liability, automobile medical payments, property damage liability, uninsured motorists as well as comprehensive, theft and collision insurance. The policy shows that Dobson Pulpwood had expressly elected to provide uninsured motorist coverage on the truck driven by Ronald Dobson at the time of the accident.
Southern's policy is a "Commercial Umbrella Liability Insurance Policy." By the provisions of this policy, Southern agrees to indemnify Dobson Pulpwood up to a limit of $1,000,000 when Dobson Pulpwood is exposed to either personal injury liability, property damage liability or advertising liability in excess of the limits of the underlying insurance policy or policies. In relation to automobile accidents for example, Southern would indemnify Dobson Pulpwood if its personal injury or property damage liability exceeds the relevant insurance limits provided for in Aetna's underlying policy. Southern's policy does not expressly offer any uninsured motorists coverage to the insured.
Northeastern's policy is a commercial excess umbrella liability insurance policy and contains provisions very similar to those included in Southern's policy. Northeastern contracts to indemnify Dobson Pulpwood up to a limit of $2,000,000 if Dobson Pulpwood is exposed to liability in excess of the limits of the underlying policies. The policy issued by Northeastern, however, is an "excess umbrella" policy which means that the insurer will pay only when the insured's liability exceeds that of the underlying umbrella policy limits (here, Southern's $1,000,000 limit) and any other relevant underlying policy or policies (such as Aetna's policy). As in the policy issued by Southern, Northeastern's policy offers no uninsured motorists protection.
Ronald Dobson instituted a tort suit on September 13, 1978 and named Aetna, Southern, and Northeastern as defendants in order to recover uninsured motorists insurance proceeds. Dobson alleged that Aetna provided uninsured motorists protection by the express terms of its policy. He further alleged that both policies issued by Southern and Northeastern are "automobile liability insurance" policies within the meaning of La.R.S. 22:1406(D)(1)(a), and, thus, the policies statutorily provide uninsured motorist coverage up to their limits for bodily injury liability.
Aetna admitted coverage and paid the uninsured motorists policy limit a $100,000 to Ronald Dobson. Southern and Northeastern denied that their respective policies are required by statute to provide uninsured motorists coverage and filed separate actions for declaratory judgment. These actions were consolidated for trial and comprise the present case which we now consider. Northeastern and Southern seek a declaration that commercial umbrella liability policies, whether they be commercial excess umbrella policies or commercial umbrella policies, are not policies of "automobile liability insurance" and, accordingly, they are not subject to La.R.S. 22:1406(D)(1)(a). The trial court held in favor of the defendant, Ronald Dobson. The court of appeal reversed. We granted writs to determine the correctness of the appellate court's ruling.
The issue before us does not involve interpretation of the provisions of the policies issued by Southern and Northeastern. Each policy affords coverage to the insured in excess of the limits of the underlying policies for liability to third persons arising out of the ownership, maintenance or use of any motor vehicle by or on behalf of the insured. Neither policy expressly provides for uninsured motorist protection.
The question, rather, is one of interpretation of La.R.S. 22:1406(D)(1)(a). That statute provides in pertinent part:
"No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor *1187 vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits ..."
We must determine whether the above statute requires commercial umbrella liability insurers to provide uninsured motorist coverage to the insured.
At the outset, we note that La.R.S. 22:1406(D)(1)(a) does not specify the types of policies which are required to provide uninsured motorist coverage. The provision simply states, "No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle ..." shall be delivered or issued for delivery in this state without affording UM protection to the insured. However, when this provision is read with reference to the other subsections of the same statute, it is obvious that La.R.S. 22:1406(D)(1)(a) was intended only to apply to automobile liability insurance policies.[1] La.R.S. 22:1406(D)(1)(b) and (D)(1)(c), for example, refer solely to automobile liability insurance policies with regard to increasing uninsured motorist coverage. La.R.S. 22:1406(D)(1)(b) provides:
"Any insurer delivering or issuing an automobile liability insurance policy referred to herein shall also permit the insured, at his written request, to increase the coverage applicable to uninsured motor vehicles provided for herein to any amount." (emphasis ours)
Similarly, in relation to admissible evidence in enforcing a claim under the UM provisions of a policy, La.R.S. 22:1406(D)(6) mentions only automobile liability insurance policies.[2]
Our inquiry, therefore, focuses upon whether a commercial umbrella liability policy is an automobile liability insurance policy within the meaning of La.R.S. 22:1406(D)(1)(a). Although we have yet to address this question, other states have considered it in construing uninsured motorist statutes similar to our own.
The Alabama Supreme Court has held that an umbrella policy is not an automobile liability insurance policy within the meaning of the uninsured motorist law. (Trinity Universal Ins. Co. v. Metzger, 360 So.2d 960 (Ala.1978)).[3] In reaching its decision, the Alabama court drew a sharp distinction between automobile liability policies contemplated by the statute and umbrella policies:
"Automobile liability policies and motor vehicle liability policies insure against the risk of loss through the operation of specific *1188 automobiles. An umbrella policy, on the other hand, is fundamentally excess insurance designed to protect against catastrophic loss. Before an umbrella policy is issued, a primary policy (the "underlying policy") must be in existence and this primary policy must by law provide uninsured motorist coverage. The umbrella policy assumes a risk of much less frequent occurrence, i.e., the risk of judgments in excess of primary policy limits, and accordingly carries premiums which reflect the lesser magnitude of this risk. The umbrella policy issued by Trinity Universal is an inherently different type of insurance from an automobile or motor vehicle liability policy, and consequently does not come within the scope of the uninsured motorist statute."
In O'Hanlon v. Hartford Acc. and Indem. Co., 639 F.2d 1019 (3rd Cir.1981), the Delaware uninsured motorist statute was found not to apply to umbrella policies.[4] As in Trinity, the court examined the nature of the umbrella policy. It noted that such a policy is designed as supplementary insurance and would not exist but for the underlying (primary) automobile policy. That underlying auto policy, the court determined, provided the insured with all the benefits accorded under the uninsured motorist statute. The court concluded that it could not read the statute as to require uninsured motorist coverage in addition to that provided in the primary policy.
Umbrella policies were held not to be subject to the New York uninsured motorist statute in the case of Maiarasso v. Continental Casualty Co., 82 A.D.2d 861, 440 N.Y.S.2d 40 (1981).[5] The court in Matarasso decided that the umbrella policyholder received the protection of the uninsured motorist statute through his underlying automobile policy and thus was not left without the relief anticipated by that law.
In Hartbarger v. Country Mut. Ins. Co. 107 Ill.App.3d 391, 63 Ill.Dec. 42, 437 N.E.2d 691 (1982), the court resolved that an umbrella policy was not statutorily required to provide uninsured motorist coverage.[6] The court stated that an umbrella policy is a very different sort of insurance from that contemplated by the uninsured motorist statute. Unlike an automobile liability insurance policy, the umbrella policy is designed only to protect the insured against excess judgments, and the risks and premiums are calculated accordingly.
Only two states, Florida and Georgia have construed their respective uninsured *1189 motorist laws to apply to an umbrella liability insurance policy.[7] Courts in both states have taken the position that the UM statute, by its plain meaning, is applicable to all policies which offer auto liability coverage.[8] Since an umbrella policy includes automobile liability protection, it is subject to the UM statute and must provide uninsured motorist coverage.'[9]
We hold that a commercial umbrella liability policy is not an automobile liability insurance policy within the meaning of our uninsured motorist statute, specifically La. R.S. 22:1406(D)(1)(a). In reaching this conclusion, we are persuaded by the reasoning employed in the decisions rendered by the majority of the courts discussed above. As noted in Hartbarger and Trinity, the umbrella policy is entirely different from the automobile liability insurance policy contemplated by the uninsured motorist law. An automobile liability policy offers primary automobile liability coverage to the insured. The umbrella policy, on the other hand, is clearly designed as comprehensive excess insurance. With respect to its automobile liability coverage, the umbrella policy cannot exist without an underlying primary auto policy, which is subject to the uninsured motorist law. In terms of risks undertaken, the two types of policies also differ. An automobile liability policy insures against the risk of loss through the operation of motor vehicles covered by the policy. In contrast, the issuer of the umbrella policy assumes the much smaller risk of the insured's exposure to liability in excess of the limits of the underlying primary policies (catastrophic loss).
The object of the uninsured motorist statute is to afford protection to the insured when he becomes the innocent victim of the negligence of uninsured motorists. Hoefly v. Government Employees Ins. Co., 418 So.2d 575 (La.1982); Booth v. Fireman's Fund Ins. Co., 253 La. 521, 218 So.2d 580 (La.1968). This object has been achieved by the underlying primary automobile liability insurance policy which must exist before an umbrella policy is issued covering automobile liability. We see no reason to strain the interpretation of "automobile liability insurance" as used in La.R.S. 22:1406(D)(1)(a) to include a policy, such as the commercial umbrella liability insurance policy, which is wholly different in nature and purpose from that contemplated by the uninsured motorist statute.
We conclude, therefore, that commercial umbrella liability policies are not automobile *1190 liability insurance policies and do not come within the scope of the uninsured motorist statute. Accordingly, the commercial umbrella liability policies involved in this suit are not required to provide uninsured motorist protection by La.R.S. 22:1406(D)(1)(a).

DECREE
For the foregoing reasons, we affirm the decision of the court of appeal that the commercial umbrella liability insurance policies issued by Southern American Insurance Company and Northeastern Fire Insurance Company of Pennsylvania are not subject to La.R.S. 22:1406(D)(1)(a) and thus are not required to provide uninsured motorist coverage. Costs assessed to the defendant.
AFFIRMED.
DIXON, C.J., dissents with reasons.
WATSON, J., dissents for reasons assigned by DIXON, C.J.
LEMMON, J., dissents and will assign reasons.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
Without any question or doubt the umbrella policies in this case are policies of "automobile liability insurance covering liability arising out of the ownership, maintenance and use of any motor vehicle," R.S. 22:1406(D)(1)(a), required by law to provide uninsured motorist coverage in limits not less than the liability limits. Only by divining the secret, unstated intent of the legislature does the majority explain that the statute was not intended to apply to umbrella policies.
In so doing, the majority thwarts the very object of uninsured motorist coverage as recognized in the majority opinionto protect the innocent victim of uninsured (and underinsured) motorists.

ON REHEARING
DIXON, Chief Justice.
In our original opinion in this case we held that excess insurance policies in the form known as "commercial umbrella" policies and "excess umbrella" policies were not automobile liability insurance policies for the purposes of R.S. 22:1406(D)(1)(a), and therefore were not required to provide uninsured motorist coverage. Consequently, we affirmed the court of appeal ruling to that effect (Southern American Insurance Co. v. Ronald Dobson, 415 So.2d 641 (La. App.1982)). Upon rehearing, we reverse and find the statute to be applicable to such policies.
The facts were adequately stated in our original opinion and need not be repeated here. In that opinion, we placed considerable emphasis on decisions from other states on this issue. We failed, however, to consider fully that the uninsured motorist statutes in those states whose reasoning we adopted were significantly different than the Louisiana statute. Moreover, we now question both the need to refer to other jurisdictions and the need to speculate on legislative intent.
Louisiana Civil Code article 13 states: "When a law is clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." The plain language of R.S. 22:1406(D)(1)(a) makes it applicable to "automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle." These policies unquestionably apply to liability "arising out of the ownership, maintenance, or use of a motor vehicle." That such coverage is made to depend on a primary policy or that the policy contains other provisions which cover other types of losses makes no difference to this central fact. The directive of the statute, being mandatory, must be read into the terms of such a policy, absent a written waiver by the insured. There is no such written waiver in this case. Therefore, the provisions of the statute apply. See Ewing v. Sanson, 394 So.2d 849, 854 (La.App.1981); LeBoyd v. Louisiana Transit Co., 375 So.2d 749, 751 (La.App.1979).
*1191 Even if we conceded that the statute is not free from ambiguity in this regard, we would reach the same conclusion. C.C. 18 states: "The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it." Upon reconsidering the evolution of our uninsured motorist statute, in light of past judicial interpretations, we conclude that the reason and spirit of the legislation clearly dictate making its provisions applicable to the types of policies at issue in this case.
R.S. 22:1406(D)(1)(a) presently requires that the insurer provide coverage "in not less than the limits of bodily injury liability provided by the policy." Originally our uninsured motorist statute protected a motorist only to the same extent as if the person who had struck him had complied with the minimum requirements of the motor vehicle responsibility law.[1] However, Act 154 of 1974 amended the liability limits of mandatory uninsured motorist coverage to equal the limits of bodily injury liability provided by the policy. Then, in 1977, Act 623 eliminated the limitation on uninsured motorist coverage and allowed an insured to increase his coverage "to any amount." See, generally, McKenzie, Louisiana Uninsured Motorist CoverageAfter Twenty Years, 43 La. L.Rev. 691, 691-94 (1983). Our legislature has thus progressed from allowing only limited recovery to the innocent victim to permitting the insured to choose the maximum limits of his uninsured motorist coverage.
This court, also, has consistently interpreted the statute, in a variety of contexts, to provide full recovery under the terms of any applicable policies to a person injured, through no fault of his own, by an uninsured or underinsured motorist.[2] Our holding today is consistent with the evolution of the statute and the jurisprudence interpreting it.
As previously noted (fn. 1), the uninsured motorist statutes of Alabama, Delaware, New York and Illinois require only that uninsured motorist coverage be provided in the minimum amounts required by law. Courts in those states have accordingly reached a different conclusion under those statutes than the one we reach today under ours.[3] The different statutory language compels a contrary inference to the one we draw today with regard to the Louisiana statute. Under those statutes, the legislative purpose is satisfied when the victim is compensated to the same extent as if he had been struck by a driver who had complied with the minimum coverage requirements of insurance mandated by law in the respective jurisdictions.[4] The language of *1192 the Louisiana statute is different, and so is the policy behind it.[5]
The effect of today's decision will be to require insurance companies doing business in this state to offer uninsured motorist coverage to an insured under the provisions of umbrella and excess policies when those policies cover "liability arising out of the ownership, maintenance, or use of any motor vehicle." The procedure will thus become the same as that for primary policies providing such coverage. If the insured, after having been informed of the (presumably higher) cost, declines such coverage, then the insurance company should have the insured execute a written waiver. Thus insureds in Louisiana will henceforth be in a position to make informed choices, and the costs can be allocated accordingly.
For these reasons, there is now judgment in favor of defendant Ronald Dobson and against plaintiffs, Southern American Insurance Company and Northeastern Fire Insurance Company of Pennsylvania, declaring the policies in this case to be "automobile liability insurance" policies for the purposes of R.S. 22:1406(D)(1)(a); the judgments of the court of appeal are reversed and set aside, and the judgments of the district court are reinstated, all at the plaintiffs' cost.
CALOGERO, J., dissents for the reasons assigned in this court's majority opinion on original hearing.
BLANCHE, J., dissents for reasons assigned on original hearing.
MARCUS, J., dissents, adhering to the opinion on original hearing.

ON APPLICATION FOR REHEARING
LEMMON, Justice, Concurring in the Denial of Rehearing.
This decision is not conclusive on the stacking issue raised by applicant Northeastern. See Taylor v. Tanner, 435 So.2d 440 (1983).
NOTES
[1] It is a familiar rule of statutory interpretation that laws in pari materia must be construed in reference to each other. La.C.C. art. 17; Smith v. Cajun Insulation, 392 So.2d 398 (La.1980); Gulf States Utilities v. Traigle, 310 So.2d 78 (La.1975).
[2] La.R.S. 22:1406(D)(6) provides in pertinent part:

"In any action to enforce a claim under the uninsured motorist provisions of an automobile liability policy, the following shall be admissible as prima facie proof that the owner and operator of the vehicle involved did not have automobile liability insurance in effect on the date of the accident in question ..."
[3] The Alabama uninsured motorist states:

"No automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state ... unless coverage is provided therein or supplemental thereto,... under provisions approved by the commissioner of insurance, for the protection of persons insured thereunder ... from owners or operators of uninsured vehicles ... provided, that the named insured shall have the right to reject such coverage; ..." Tit. 36, § 74(62a), Code of Ala.1940, Recompiled 1958.
[4] Delaware's uninsured motorist statute, 10 Del.Code tit. 18 § 3902(a), as amended, provides:

"No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle shall be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or hit-and-run motor vehicles for bodily injury, sickness or disease, including death, or personal property damage resulting from the ownership, maintenance or use of such uninsured or hit-and-run motor vehicle."
[5] New York's uninsured motorist law in applicable part:

"No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance and use of a motor vehicle by the insured shall be issued or delivered by any authorized insurer upon any motor vehicle then principally garaged or principally used in this state unless it contains a provision whereby the insurer agrees that it will pay to the insured... all sums ... which the insured or his legal representative shall be entitled to recover as damages from an owner or operator of an uninsured motor vehicle, ..." (Insurance Law, § 167, subd. 2-a)
[6] Ill.Rev.Stat.1979, ch. 73, par. 755a provides in pertinent part:

"No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in this State ... unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Section 7-203 of the Illinois Vehicle Code for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles ..."
[7] St. Paul Fire and Marine Ins. Co. v. Goza, 137 Ga.App. 581, 224 S.E.2d 429 (1976) (dicta); Chicago Ins. Co. v. Dominguez, 420 So.2d 882 (Fla.App. 2nd Dist.1982); Cohen v. American Home Ass. Co., 367 So.2d 677 (Fla.App. 3rd Dist.1979);Aetna Cas. and Surety Co. v. Fulton, 362 So.2d 364 (Fla.App. 4th Dist.1978); Aetna Cas. and Surety Co. v. Green, 327 So.2d 65 (Fla.App. 1st Dist.1976).
[8] § 627.727(1) Florida Statute provides as follows:

"No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in not less than the limits of the liability insurance purchased by the named insured for bodily injury, * * * [or such lower limits complying with the company's rating plan as may be selected by the named insured,] under provisions filed with and approved by the department, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the coverage required under this section shall not be applicable when, or to the extent that, any insured named in the policy shall reject the coverage ..."
The Georgia UM statute provides in pertinent part:
"No automobile liability policy or motor vehicle policy shall be issued or delivered in this State to the owner of such vehicle, or shall be issued or delivered by any insurer licensed in this State, upon any motor vehicle then principally garaged or principally used in this State, unless it contains an indorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, except where such coverage has been rejected by the insured." Code Ann. § 56-407.1(a).
[9] The decisions reached by the Florida and Georgia courts are criticized in 8c J. Appleman, Insurance Law and Practice § 5071.65.
[1] This is still the case under the statutes of those states upon which we relied in our original opinion. See Ala.Code § 32-7-23 (1975); Del.Code Ann. tit. 18, § 3902(a)(2) (Supp.1982); N.Y.Insurance Law § 167(2-a) (McKinney Supp.1983); Ill.Ann.Stat. ch. 73, § 755a (Smith-Hurd Supp.1983).
[2] See, e.g., Booth v. Fireman's Fund Insurance Co., 253 La. 521, 527-29, 218 So.2d 580, 583-84 (1968) (action against insurer to recover under uninsured motorist policy terms held to prescribe in ten years, not one); Graham v. American Casualty Company of Reading, Pa., 261 La. 85, 93-94, 259 So.2d 22, 24-25 (1972) (pro rata clauses which attempt to reduce the mandatory minimum coverage under a policy held invalid); Veal v. Interstate Fire & Casualty Co., 325 So.2d 795, 796-97 (La.1975) (uninsured motorist statute applies to "unauthorized" insurers who issue policies through surplus line brokers in Louisiana); Hoefly v. Government Employees Insurance Co., 418 So.2d 575, 578-79 (La. 1982) (uninsured motorist carrier held solidarily liable with the tortfeasor).
[3] In our original opinion, we relied upon Trinity Universal Insurance Co. v. Metzger, 360 So.2d 960 (Ala.1978); O'Hanlon v. Hartford Accident & Indemnity Co., 639 F.2d 1019 (3d Cir.1981); Matarasso v. Continental Casualty Co., 82 A.D.2d 861, 440 N.Y.S.2d 40 (1981); Hartbarger v. Country Mutual Insurance Co., 107 Ill. App.3d 391, 63 Ill.Dec. 42, 437 N.E.2d 691 (1982).
[4] Hartbarger v. Country Mutual Insurance Co., 437 N.E.2d 691, 694: "The purpose of the Illinois uninsured motorist statute ... was to compensate the insured to at least the same extent as he would have been had he been injured by a motorist who had complied with the Financial Responsibility Law." Accord, Higgins v. Nationwide Mutual Insurance Co., 50 Ala.App. 691, 695-96, 282 So.2d 295, 300, aff'd. 291 Ala. 462, 282 So.2d 301 (1973).
[5] The Florida uninsured motorist statute contains provisions which are almost identical to Louisiana's. See Fla.Stat.Ann. § 627.727 (West Supp.1983). Florida courts, under such a statute, have reached the same conclusions as we reach today. See, e.g., First State Insurance Co. v. Stubbs, 418 So.2d 1114 (Fla.App. 1982), cert. den. 426 So.2d 26 (1983).