769 F.2d 1047
 Godfrey JASMIN, Plaintiff-Appellee,
v.
Walton J. DUMAS, et al., Defendants,
CONTINENTAL CASUALTY COMPANY, Defendant-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.
CONTINENTAL CASUALTY COMPANY, Plaintiff-Appellee,
v.
Godfrey JASMIN, Defendant-Appellant,
v.
Henry M. JASMIN, Defendant-Appellee.
 Nos. 84-3185, 84-3368.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 16, 1985.
 
 Deutsch, Kerrigan & Stiles, Raymon G. Jones, Ralph L. Kaskell, Jr., New Orleans, La., for defendant-appellant in No. 84-3185.
 Sessions, Fishman, Rosenson, Boisfontaine & Nathan, Robert E. Winn, Shirley A. Nassif, New Orleans, La., for plaintiff-appellee in No. 84-3185.
 Ralph L. Kaskell, Jr., Raymon G. Jones, New Orleans, La., for Continental in No. 84-3368.
 Shirley A. Nassif, Robert E. Winn, New Orleans, La., for G. Jasmin in No. 84-3368.
 C. Gordon Johnson, Jr., New Orleans, La., for W. Dumas and State Farm.
 Lawrence J. Ernst, New Orleans, La., for Henry Jasmin.
 John C. Combe, Jr., New Orleans, La., for Lumbermans Mutual Casualty Co.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before TATE and HIGGINBOTHAM, Circuit Judges, and CASSIBRY,* District Judge:
 TATE, Circuit Judge:
 
 
 1
 These consolidated appeals arise from two Louisiana diversity cases. The procedural stance and the various issues raised and determined on appeal are more fully described in an unpublished portion of this opinion. In this published portion of the opinion, we discuss the only issues we regard to be of sufficient interest to other than the parties.
 
 
 2
 The issues we will discuss concern Louisiana's statutory uninsured motorist coverage and the liability thereunder of the insurers under the facts of this case as affording, for purposes of this uninsured motorist coverage, "primary" uninsured motorist coverage or "excess" uninsured motorist coverage. See La.R.S. 22:1406(D). "For the purpose of this coverage the term uninsured motor vehicle shall ... be deemed to include an insured motor vehicle when the automobile liability insurance on such vehicle is less than the amount of damages suffered by the insured and/or the passengers in the insured's vehicle at the time of an accident, ... as determined by final adjudication." La.R.S. 22:1406(D)(2)(b).
 
 
 3
 * Before discussing other statutory provisions and the Louisiana decisions relevant to the issues before us, we summarize briefly the facts from which the issues arise:
 
 
 4
 Godfrey Jasmin, while riding as a passenger in a vehicle leased by the insured (Pulitzer), was tortiously injured. Under jury determinations reasonably based upon the evidence, the driver of Pulitzer's car, its employee, was free of fault in the accident, and the sole fault in the accident was that of Dumas, the driver of the other vehicle involved in the accident; Dumas' vehicle, however, had only $50,000 insurance coverage (provided by State Farm) affording liability for its negligent use. As a result of the accident, the plaintiff Jasmin was a quadriplegic and suffered extensive special damages (at least $1,500,000) for medical needs occasioned by his injuries; the jury awarded him $2,542,500, an award not found to be excessive by the district court or by us.
 
 
 5
 Relevantly, Pulitzer, the insured owner of the vehicle in which Jasmin was injured, had two policies that afforded coverage both on this vehicle and upon another vehicle: (1) a liability policy (issued by Lumbermen's), which provided $500,000 liability insurance for the insured's negligence, which contained also a $500,000 uninsured motorist policy; and (2) a commercial umbrella liability policy (issued by Continental) that provided for $1,000,000 liability coverage for the insured's negligence on each of the vehicles, in excess of the coverage provided by Lumbermen's. Under Louisiana's uninsured motorist statute, as recently interpreted by the Louisiana courts (see below), the Continental umbrella policy also provided $1,000,000 uninsured motorist coverage on each of Pulitzer's vehicles.
 
 
 6
 As will be explained more fully below, the insurance coverages potentially applicable to pay liability for damages caused by the negligence of the tortfeasor Dumas, the underinsured motorist, were:
 
 
 7
 (1) The $50,000 liability coverage (State Farm) on the operation of Dumas' vehicle;
 
 
 8
 (2) The $500,000 ("U/M") coverage (Lumbermen's) issued to the insured (Pulitzer) on the vehicle in which the plaintiff Jasmin was riding as a passenger when injured--this is conceded by all parties to be, for U/M coverage purposes, "primary" U/M coverage on the vehicle;
 
 
 9
 (3) The $500,000 U/M coverage (Lumbermen's) provided by the same policy on the other vehicle of the insured (in which the injured person was not riding at the time of the accident)--this is conceded by all parties to be, for U/M purposes, "excess" U/M coverage;
 
 
 10
 (4) The $1,000,000 U/M coverage statutorily provided to the insured Pulitzer by Continental as the result of its issuance of its umbrella coverage of the vehicle in which Jasmin was riding--whether this is, for U/M purposes, "primary" or "excess" U/M coverage is the principal issue before us;
 
 
 11
 (5) The $1,000,000 uninsured motorist provided by the insured Pulitzer by Continental as the result of its issuance of its umbrella coverage of Pulitzer's other vehicle insured by the policy (in which Jasmin was not an occupant at the time of the accident)--without substantial dispute, this was, for purposes of U/M coverage, an "excess" U/M coverage.
 
 
 12
 The jury awarded the plaintiff-appellee Jasmin $2,542,500 for his injuries. Prior to judgment, Lumbermen's (as a "primary" U/M insurer of the vehicle in which Jasmin was riding) paid its U/M policy limits of $500,000. For the unpaid amount of the judgment in excess of that amount of the judgment against the underinsured tortfeasor Dumas, the district court held the insurers before it liable for the following amounts:
 
 
 13
 (1) State Farm, as liability insurer of Dumas, for its policy limits of $50,000--not contested on appeal;
 
 
 14
 (2) Continental, under its statutory U/M coverage of the vehicle in which Jasmin was riding when injured, in the amount of $1,000,000.
 
 
 15
 We do not understand the defendant-appellee Continental's arguments to raise a serious dispute as to this allocation. However, by his cross-appeal, the plaintiff Jasmin appeals the district court's characterization of Continental's U/M coverage on the accident vehicle as, for U/M purposes, "excess" rather than "primary". Jasmin contends that, instead, Continental's U/M coverage of the accident-involved vehicle is "primary" U/M coverage and that, therefore, he is entitled to collect on this U/M coverage as primary, and also to collect an additional $1,000,000 from Continental under its U/M coverage of the non-accident vehicle of the insured Pulitzer, which provided "excess" U/M coverage available to him under the Louisiana statute. For reasons to follow, we find that the plaintiff Jasmin is entitled to this relief, by virtue of an intervening Louisiana decision entered after the district court judgment in the present case, which decision clarified Louisiana law as to this issue.
 
 II
 
 16
 Louisiana statutory regulation of uninsured motorist coverage, La.R.S. 22:1406(D), and its jurisprudential development of rules as to "stacking" of U/M coverages, is rather complex.[1] By way of introduction, any "automobile liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle" must provide U/M coverage "in not less than the limits of bodily injury provided by the policy", unless the insured rejects it in writing. La.R.S. 22:1406(D)(1)(a).
 
 
 17
 At the time this suit was instituted against Continental, Louisiana law was unclear as to whether this statutory provision--mandating by statute automatic U/M coverage in the same limits as the underlying liability policy (unless the insured had rejected it in writing), as if written into the policy--applied to commercial umbrella liability policies such as the present one issued by Continental to Pulitzer, its insured; the policy provided coverage for, inter alia, liability for use of an automobile in excess of an underlying automobile liability policy described in the policy declarations. However, in the course of the litigation in the district court, the Supreme Court of Louisiana held that a commercial umbrella liability policy (similar if not identical to that issued by Continental in this case) was within the terms of Louisiana's uninsured motorist statutes, insurance coverage applying to liability arising out of motor vehicle use and therefore, as mandated by La.R.S. 22:1406(D), by law provided U/M coverage up to the amount of the umbrella policy limits, unless the insured had rejected it in writing. Southern American Insurance Company v. Dobson, 441 So.2d 1185, 1190-91 (La.1983).
 
 
 18
 Thus, under this Dobson decision, Continental's umbrella policies provided, in addition to its $1,000,000 coverage for excess personal liability of the named insured himself, U/M coverage in the same amount for each of the two vehicles of Pulitzer insured by the umbrella policy. Unlike the umbrella coverage providing for liability of the insured itself--which applied only when the underlying (Lumbermen's) policy limits as to the named insured's liability were exhausted--the statutorily-mandated U/M coverage extended to all damages in excess of the liability insurance coverage provided for the underinsured vehicle of the third-person tortfeasor. La.R.S. 22:1406(D)(2)(b). That is, Continental's U/M exposure was triggered, not by exhaustion of underlying policy limits of its own named insured (Pulitzer)--who was not liable in the present accident--but instead by exhaustion of the policy limits of the underinsured motorist (the tortfeasor Dumas), for whom Continental by its U/M coverage provided coverage against Dumas 's liability. Accordingly, upon exhaustion of Dumas's $50,000 (State Farm) policy limits, Continental's U/M coverage applied to Dumas' liability in excess thereof.
 
 III
 
 19
 The plaintiff Jasmin was injured while riding in a vehicle he did not own. Under La.R.S. 22:1406(D)(1)(c), he was therefore entitled to recover on any "primary" U/M coverage on the vehicle in which he was an occupant, as well as (upon exhaustion of that primary U/M coverage) to recover "as excess from other uninsured motorist coverage available to him", with the statutory anti-stacking limitation that no more than one "excess" U/M coverage would be available to him.[2]
 
 
 20
 Therefore, as an injured occupant of a non-owned (by him) vehicle, the plaintiff Jasmin is permitted to "stack" one, and one only, "excess" U/M coverage as to liability for damages of the underinsured motorist (the tortfeasor Dumas) in excess of damages covered by Dumas's own (State Farm) liability policy and of any "primary" U/M coverage issued on the vehicle in which Jasmin was riding. Courville v. State Farm Mutual Automobile Insurance Company, 393 So.2d 703 (La.1981); Bonner v. Robinson, 415 So.2d 527 (La.App. 1st Cir.1982). However, the plaintiff Jasmin is entitled to elect to recover from, of several excess U/M insurers, "the provision or policy with the highest limits." Taylor v. Tanner, 442 So.2d 435, 438 (La.1983).
 
 
 21
 "Excess" U/M coverage--"other insured motorist coverage" that is not "primary" U/M coverage "on the vehicle in which the injured party was an occupant", La.R.S. 22:1406(D)(1)(c) (quoted in note 2 supra )--may be "available" to the injured person for several reasons. In this case (as is conceded, at least for the Lumbermen's U/M coverage provided on the other insured vehicle of its policyholder Pulitzer, in which Jasmin was not riding), statutory "excess" U/M coverage is available to Jasmin by virtue of the Louisiana rule that U/M coverages on other vehicles insured by a single policy insuring the collision vehicle may be available to a plaintiff injured in the collision vehicle. See Barbin v. United States Fidelity & Guaranty Co., 315 So.2d 754 (La.1975); Bonner v. Robinson, 415 So.2d 527 (La.App. 1st Cir.1982).[3]
 
 IV
 
 22
 Under these principles, on his cross-appeal the plaintiff Jasmin argues that the respective insurer's liability as to the $2,542,500 judgment against their named or U/M insured, the tortfeasor Dumas, should be as follows: the first $50,000 against (a) State Farm, the insurer of Dumas' vehicle; with the second and third allocations being against the "primary" U/M insurers of the vehicle in which Jasmin was injured, (b) Lumbermen's ($500,000) and (c) Continental ($1,000,000 on its umbrella policy U/M coverage of the vehicle in which Jasmin was injured). Since the tortfeasor's and the primary U/M coverages were exhausted without satisfying the judgment, then (d) Continental should be held liable for up to an additional $1,000,000, by reason of the statutory "excess" U/M coverage provided by its umbrella policy's insuring of the other automobile of its insured, Pulitzer (in which, of course, Jasmin was not an occupant).
 
 
 23
 The district court rejected this argument and allocated liability among the insurers as including only (a) $50,000, State Farm (as the tortfeasor's insurer); (b) $500,000, Lumbermen's (as the primary U/M insurer); and (c) $1,000,000, Continental (as an excess U/M insurer, with the plaintiff being permitted to select only one such excess insurer). The district court essentially accepted Continental's argument that, being contractually an excess umbrella insurer for Lumbermen's underlying liability for damages tortiously caused by its named insured (Pulitzer), Continental was likewise by virtue of the contractual provision, an "excess" U/M insurer within the contemplation of the Louisiana U/M statute. The issue was not addressed by the Louisiana Supreme Court in Dobson, supra, and it was left open by Justice Lemmon's concurring opinion on the denial of rehearing in that case, 441 So.2d at 1192.
 
 
 24
 Whatever merit there may have been to Continental's argument was dispelled, however, by a decision of the Louisiana intermediate court, certiorari denied by the Louisiana Supreme Court, handed down subsequent to the district court opinion in this case. Capone v. King, 467 So.2d 574, 579-80 (La.App. 5th Cir.), cert. denied, 468 So.2d 1205 (La.1985). There, the non-owned vehicle in which the plaintiff was riding when injured through the negligence of an uninsured motorist had, relevantly, the following U/M coverages applicable: (a) $100,000 on the vehicle itself, secured by the vehicle's employee-owner; (b) $500,000 provided by the employee-driver-owner's employer by its own (Aetna) liability policy; and (c) $5,000,000 provided by the employer's (Chicago) umbrella policy.[4] The Louisiana court held that, under the literal terms of La.R.S. 22:1406(D)(1)(c), all three policies were primary U/M insurers, for purposes of the U/M coverage, because, since "all covered the car in which [the injured plaintiff] was a passenger, they are all primary, and therefore available without reference to the above rule on stacking." 467 So.2d at 580.[5]
 
 
 25
 The Louisiana uninsured motorist statute, for purposes of its statutory U/M coverage, characterizes as "primary" the U/M coverage on "the vehicle in which the injured party was an occupant." La.R.S. 22:1406(D)(c)(1)(c) (quoted in note 2 supra ). It does not provide that there will be only one "primary" U/M coverage. Continental's umbrella policy U/M coverage provides "primary" U/M coverage equally with that provided by the policy issued by Lumbermen's and equally covering the vehicle in which the plaintiff Jasmin was riding when injured. Capone v. King, supra.
 
 
 26
 Accordingly, the injured plaintiff Jasmin is entitled to recover from both Lumbermen's and Continental, as statutory "primary" U/M insurers. Further, since recovery from both of them and from the tortfeasor Dumas's own insurer still leaves an excess of the judgment unpaid, Jasmin is entitled by statute to recover additionally from any one "excess" U/M coverage "available" to him. La.R.S. 22:1406(D)(1)(c)(ii) (quoted at note 2 supra ).
 
 V
 
 27
 As earlier noted, by Louisiana judicial interpretations of the Louisiana uninsured motorist statute, two "excess" U/M coverages as defined by that statute, are "available" to the plaintiff, Jasmin: (a) the $500,000 U/M coverage provided by Lumbermen's by virtue of its insuring the other vehicle of its insured, Pulitzer, by its underlying liability policy; and (b) the $1,000,000 U/M coverage provided by Continental under its umbrella policy equally insuring that other vehicle. Under Louisiana law, Jasmin is entitled to elect to recover from the U/M policy providing the highest limit. Taylor v. Tanner, 442 So.2d 435, 438 (La.1983). Though Taylor involved only statutory "excess" policies that were all "primary", nothing in the opinion suggests that the Louisiana Supreme Court would not recognize an equivalent plaintiff's choice as between underlying and umbrella policies within the statutory "excess" class.[6]
 
 
 28
 Jasmin has chosen to forego proceeding against Lumbermen's on its excess U/M coverage and has elected, instead, to proceed against Continental on its higher excess U/M coverage. Under the Louisiana statute, by which both policies equally are statutory "excess" U/M coverages, Jasmin is entitled by Louisiana law to make that election.
 
 
 29
 Accordingly, the plaintiff is entitled to have the judgment amended so as to hold Continental liable, as by statute an "excess" U/M insurer, for an additional amount of the award not to exceed its U/M policy limits of $1,000,000.
 
 Conclusion
 
 30
 The other issues will be addressed in the unpublished portion of this opinion. That portion of the opinion will contain the specific directions for the mandate to issue, including that resulting from our holding in this published portion of the opinion that the judgment in the plaintiff Jasmin's favor be AMENDED to award him an additional amount, not to exceed one million dollars, against Continental. For reasons herein set forth and to be stated in the unpublished portion of this opinion, the district court judgment will be AMENDED and, as amended, AFFIRMED.
 
 
 31
 AMENDED and AFFIRMED.
 
 
 
 *
 District Judge of the Eastern District of Louisiana, sitting by designation
 
 
 [1]
 For an excellent summary of statutory and jurisprudential development, see McKenzie, Louisiana Uninsured Motorist Coverage--After Twenty Years, 43 La.L.Rev. 693, 717-723 (1983)
 
 
 [2]
 In pertinent part, La.R.S. 22:1406(D)(1)(c) (1977), provides:
 With respect to bodily injury to an injured party while occupying an automobile not owned by said injured party, the following priorities of recovery under uninsured motorist coverage shall apply:
 (i) The uninsured motorist coverage on the vehicle in which the injured party was an occupant is primary;
 (ii) Should that primary uninsured motorist coverage be exhausted due to the extent of damages, then the injured occupant may recover as excess from other uninsured motorist coverage available to him. In no instance shall more that one coverage from more than one uninsured motorist policy be available as excess over and above the primary coverage available to the injured occupant.
 [Emphasis added.]
 
 
 [3]
 The Louisiana legislature amended La.R.S. 22:1406(D) in 1977 (Act 623) generally to prohibit stacking, but retained the limited stacking exception provided in La.R.S. 22:1406(D)(1)(c), quoted at note 2, for non-owner occupants. See Courville v. State Farm Mutual Automobile Insurance Co., 393 So.2d 703, 705 (La.1981); McKenzie, Louisiana Uninsured Motorist Coverage--After Twenty Years, 43 La.L.Rev. 691, 717-723 (1983)
 
 
 [4]
 The statutory U/M coverage was afforded under (b) and (c) because the insured had not rejected it in writing as to the vehicle involved in this accident, and under Dobson, supra
 
 
 [5]
 The court did indicate that, with regard to the particular vehicle on which U/M coverage was afforded, the contractual excess-coverage would apply to regulate the primary U/M liability as between the underlying liability policy (Aetna's) and the by-contract excess umbrella policy (Chicago's), both of which, however, were statutory "primary" U/M insurers. Therefore, as between these two statutory "primary" U/M insurers, equally so by statute, the umbrella policy's U/M coverage did not become operable until the underlying liability policy's U/M coverage was exhausted by payment of the judgment. Capone, supra, 467 So.2d at 580
 
 
 [6]
 "[T]he primary objective of the uninsured motorist scheme [is] to protect innocent victims of the negligence of financially irresponsible motorists by providing such victims with full recovery." Taylor v. Tanner, 442 So.2d 435, 438 (La.1983) (emphasis in original). See Southern American Insurance Co. v. Dobson, 441 So.2d 1185, 1191 (La.1983) (noting that legislative evolution of uninsured motorist statute and jurisprudence interpreting it are in direction of full recovery for injured plaintiff)