CHATELAIN, Judge,
dissenting.
|,In this uninsured/underinsured motorist (UM) case, the majority reverses the trial court’s grant of summary judgment in favor of Lonny Hayes, individually and as administrator of the estate of his minor child, Garret Hayes, and Melissa Hayes. In doing so, a majority of the panel and the concurring judge, respectively, find the 2007 and 2011 UM waivers of O’Neal’s Feeder Supply, Inc. (“O’Neal’s”) valid; accordingly, they find Penn Millers Insurance Company (“Penn Millers”) issued O’Neal’s’ a commercial auto policy with no UM coverage. For the following reasons, I respectfully dissent.
As more fully explained herein, I find Penn Millers’ requirement that O’Neal’s annually apply for insurance necessitated successive annual UM waivers because of the claims-made aspect of the policy, or a portion thereof. For different reasons, I also find that a new UM waiver was required when the umbrella portion of the policy, also applicable to the underlying $1 million automobile coverage, increased for the 2009-2010 policy period from $2 million to $3 million. And I further find that O’Neal’s 2011 UM waiver was invalid because the insurer’s name or logo was not inserted on the UM form as the Commissioner of Insurance (“Commissioner”) required in LDOI Bulletin No. 08-02.
*1282 J^PENN MILLERS’ NEW APPLICATION REQUIREMENT
Louisiana law is clear that the completion of a new application requires the execution of a new UM form. Louisiana Revised Statute 22:1295(l)(a)(ii) effective January 1, 2011 (emphasis added) explicitly provides, in pertinent part:
Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purposes of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.
“When a law is dear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.” La.Civ.Code art. 9; see also La.R.S. 1:4; SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695 (La. 6/29/01), 808 So.2d 294. Likewise, with regard to the use of the phrase “a new policy shall mean” in La.R.S. 22:1295, La.R.S. 1:3 provides that “[t]he word ‘shall’ is mandatory!)]”
This court stated in Guillory v. Progressive Ins. Co., 12-1284, p. 6 (La.App. 3 Cir. 7/3/13), 117 So.3d 318, 323:
It is incorrect to assert that a new policy can only be created when there is a change in liability limits.... Another way to enter into a new policy arrangement is further laid out in the statute [La.R.S. 22:1295(1)(a)(ii)]: through completion of an application on the required form.
The Guillory decision fully comports with the definition of a new policy for purposes of the UM statute.
Although Penn Millers may have labeled each annual transaction as a “Policy Renewal Certificate,” its formulaic designation cannot defeat the substantive provisions of La.R.S. 22:1295(l)(a)(ii) and the legal effect its claims-made requirement had on the parties.
13In my view, the evidence is clear that each year O’Neal’s completed a new application for coverage. A cursory review of the application form Penn Millers annually provided to O’Neal’s[1] fully supports my conclusion. In each annual application O’Neal’s is referenced as “applicant” and signs at the signature block identified as “Applicant’s Signature.” Moreover, just above the applicant’s signature block appears language, more or less the same each time, that states in each instance that the applicant’s personal information is collected “in connection with this application for insurance.”
Relying upon the explicit language of La.R.S. 22:1295(l)(a)(ii) and the facts of the present case, I find O’Neal’s completed new applications annually that Penn Miller’s required. As such I find the 2007 UM selection ineffective as it pertains to the policy of insurance because new UM waivers, except for 2011, were not garnered yearly thereafter.
2009-2010 UMBRELLA POLICY INCREASE
Applying Southern American Insurance Co. v. Dobson, 441 So.2d 1185 (La.1983) (on rehearing) and Futch v. Commercial Union Insurance Co., 625 So.2d 1019 (La.1993), the majority concludes that although a new UM waiver was required for the *1283 umbrella policy, a similar UM waiver was not needed for the underlying commercial auto policy. I disagree.
In Dobson, the Louisiana Supreme Court held that the UM statute mandates UM coverage, not only for an automobile liability policy, but for any policy providing automobile liability insurance. In reaching that conclusion, the supreme court reversed this circuit which had concluded that the UM statute required UM coverage only under an automobile liability policy and that umbrella policies were |4not automobile liability policies under the meaning of the UM statute. Southern American Inc. Co. v. Dobson, 415 So.2d 641 (La.App. 3 Cir. 1982), rev’d, 441 So.2d 1185 (La.1983) and Northeastern Fire Insurance Co. of Pennsylvania v. Dobson, 415 So.2d 644 (La.App. 3 Cir. 1982), rev’d, 441 So.2d 1185 (La.1983).
There is no doubt that O’Neal’s auto policy and its umbrella policy, though separate elements of a single packet of insurance, potentially provide coverage to Hayes, the plaintiff in the present case. Accordingly, in the absence of a valid UM waiver, Hayes would have UM coverage available not only for the $1 million under the underlying auto policy but also the $3 million under the umbrella policy, the amount increased in 2009. Under these facts, I find that the combined overall limits have been increased, resulting in the change in the limits of liability La.R.S. 22:1295(l)(a)(ii) contemplates.[2] Therefore, I suggest a new UM waiver was required when the umbrella policy limit increased for the 2009-2010 policy period.
VALIDITY OF THE 2011 UM WAIVER
Although the majority opinion does not reach the question of whether O’Neal’s 2011 UM waiver was valid, the concurring opinion does address that issue. In that regard, I disagree with the concurrence’s conclusion that this purported 2011 UM waiver was valid.
The Louisiana Supreme Court has held the UM statute is liberally construed. Daigle v. Authement, 96-1662 (La. 4/8/97), 691 So.2d 1213; Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987). The liberal construction given the UM statute |srequires the statutory exceptions to coverage be interpreted strictly. Id. Any exclusion from coverage in an insurance policy must be clear and unmistakable. Daigle, 691 So.2d at 1213; Roger, 513 So.2d at 1126. In accordance with this strict construction requirement, “[t]he insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits.” Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992). As stated in Roger, 513 So.2d at 1130 (citations omitted):
The law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment. Accordingly, to effect a valid rejection of the UM coverage ... the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued *1284 or to be issued by the insurer. A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection.
Moreover, in Duncan v. U.S.A.A. Insurance. Co., 06-363, pp. 12-14 (La. 11/29/06), 950 So.2d 544, 552-53, the supreme court stated:
In directing the commissioner of insurance to prescribe a form, the legislature gave the commissioner the authority to determine what the form would require.
[[Image here]]
We find that, “The expression of a desire not to have UM coverage, however clear, does not necessarily constitute a valid rejection if the expression of rejection does not meet the formal requirements of law,” as stated by the First Circuit Court of Appeal in Cohn v. State Farm Mut. Auto. Ins. Co., 03-2820 at p. 5 (La.App. 1 Cir. 2/11/05), 895 So.2d 600, 602, citing Roger, 513 So.2d at 1131. As stated above, the legislature gave the commissioner of insurance the authority to create a form and stated that “such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance.” Pursuant to that mandate, compliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid. The insurer cannot rely on the insured’s intent to waive UM coverage to cure a defect in the form of the waiver.
| r,Effective on or after January 1, 2010, the Commissioner promulgated LDOI Bulletin No. 08-02 and prescribed a new UM waiver form. As applicable to the present case, LDOI Bulletin No. 08-02 provides:
A properly completed and signed Uninsured/Underinsured Motorist Bodily Injury Coverage Form (UM form) creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.
When properly completed and signed by the named insured or his legal representative, this UM form shall be conclusively presumed to become part of the policy or insurance contract when issued and delivered. The current UM form was originally prescribed and distributed by the Commissioner in Bulletin LIRC 98-01. With the exception of a statutory reference correction in Louisiana Department of Insurance (LDOI) Bulletin No. 01-05 Amended, the UM form has remained unchanged since it was issued in Bulletin LIRC 98-01.
Purpose
The purpose of LDOI Bulletin No. 08-02 is to issue the revised UM form. The revision is in response to the myriad of issues that Louisiana courts have recently examined regarding the current UM form, including, but not limited to, what constitutes a properly completed form, what information must be included prior to the insured’s signature, policy identification, company identification and backdating. The revised UM form incorporates changes designed to address these issues and assist both insureds and insurers as well as Louisiana courts.
[[Image here]]
Important Form Changes
[[Image here]]
• Policy number and other policy identification information—The revised UM form includes two boxes on the lower right hand corner of the form.
—The upper box contains an area that the insurer may use for policy information purposes (e.g. policy number, binder number, application number, etc.). This box does not need to be filled in for the form to be properly completed.
—The lower box must contain one of the following: the individual compa *1285 ny name, the group name, or the insurer’s logo.
^Considering the insurer’s identification requirement at issue herein, I respectfully suggest that the Commissioner’s intentions could not have been clearer. First, prior Bulletin 98-01 required the company name be placed at the lower left-hand corner but provided no space for that identifying requirement; Bulletin No. 08-02 addressed that, utilized the emphasized word “must”[3] and the UM form was adjusted accordingly with a special block for such identification on one document. Second, Gingles v. Dardenne, 08-2995 (La. 3/13/09), 4 So.3d 799 and Ashmore v. McBride, 09-80 (La.App. 3 Cir. 6/3/09), 11 So.3d 720, concluded, under the pre-2010 UM waiver directive, that such waiver was not invalid if the form failed to include the insurer’s name; Bulletin No. 08-02 addressed that and made the appropriate adjustments to the UM waiver form.[4]
In light of the well-stated intent of the Commissioner in Bulletin No. 08-02, as well as the legislative grant of authority to the Commissioner to determine the form requirements, -I find Gingles and Ash-more [5] distinguishable. Simply stated, both were decided under facts using the pre-2010 UM waiver form.
ISI further observe that unlike Duncan, 950 So.2d 544 and Carter v. State Farm Mutual Automobile Insurance Co., 07-1294 (La. 10/5/07), 964 So.2d 375, both cases that relied upon the- Commissioner’s regulations in reaching their determinations, Gingles, 4 So.3d 799, taade no such regulatory mention.[6]1 respectfully suggest *1286 that because of the legislative grant of authority to the Commissioner to prescribe a UM form, the absence of such reference in Gingles failed to comport with the anal-yses utilized in Duncan and Carter wherein the binding effect of the Commissioner’s bulletins were relied upon. See Clark v. Savoy, 14-308 (La.App. 1 Cir. 10/15/14), 2014 WL 5305887 (not published), writ denied, 14-2388 (La. 2/6/15), 158 So.3d 821 (holding that when determining the validity of a UM selection form, the Commissioner’s then current requirements govern). As the Fifth Circuit stated in Flores, 19 So.3d at 1200, “The Commissioner’s rules either apply, as found in Carter, or they should not apply at all.”
Lastly, I suggest that the simple reference in Gingles, 4 So.3d at 799, that “the form at issue in these proceedings satisfies all of the requirements of our opinion in Duncan [,] ” falls short in its analysis. As evidenced by the various form changes that the Commissioner had adopted since Duncan, there existed formulaic requirements that were not in existence at the time Duncan was decided. In my 19opinion, not to have considered these changes appears to make the Commissioner’s rules superfluous.[7]
In conclusion, Louisiana law “imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment.” Roger, 513 So.2d at 1131-32. To validly reject the UM coverage “the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer.” Id. at 1132. In the present case, I find the various legal requirements, including those mandated by the Commissioner, have not been sufficiently met to create a rebuttable presumption that the insured knowingly rejected coverage. Therefore, I would affirm the trial court.
For these reasons, I respectfully dissent.

. "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.” La.Civ.Code art. 2056.

. In considering the Dobson case in the context of La.R.S. 22:1295(l)(c), the anti-stacldng provision, the following has been stated:
The public policy behind UM coverage obviously encourages the purchase of excess coverage. Layers of primary and excess UM coverage purchased by a single insured is the equivalent of one policy that provides the total limits of liability and should be treated as such under the anti-stacking provision.
William Shelby McKenzie and H. Alston Johnson III, 15 La. Civ. Law Treatise, Insurance Law and Practice, § 4:31 (4th ed. 2012) (emphasis added).

. "Must” is mandatory language. Singleton v. State, Dep’t of Pub. Safety & Corr. ex rel. Elayn Hunt Corr. Ctr., 03-1294 (La.App. 1 Cir. 4/2/04), 878 So.2d 555, 556. "[I]f the rules are stated in mandatory language, they must he obeyed and followed.” Fegan v. Lykes Bros. S.S. Co., 198 La. 312, 322, 3 So.2d 632, 635 (1941). It is evident that tire Commissioner fully thought through this requirement. This is especially true when this proviso is compared with the bulletin’s use of the permissive “may” as it pertains to the policy information.

. Borel v. Young, 07-0419, pp. 7-8 (La. 11/27/07), 989 So.2d 42, 48, on reh’g (July 1, 2008) states, in pertinent part:
A long line of jurisprudence holds that those who enact statutory provisions are presumed to act deliberately and with full knowledge of existing laws on the same subject, with awareness of court cases and well-established principles of statutory construction, with knowledge of the effect of their acts and a purpose in view, and that when the Legislature changes the wording of a statute, it is presumed to have intended a change in the law.”
In the present case, the Commissioner, though on the regulatory side, tracks this jurisprudence and makes it clear what changes were made and the reason such changes were required.

. Other like cases may be similarly distinguished. See Dixon v. Direct Gen. Ins. Co. of Louisiana, 08-0907 (La.App. 1 Cir. 3/27/09), 12 So.3d 357 (UM selection form was valid, because it complied with the Duncan requirements, even though it did not bear, the insurer's name, as required by LIRC Bulletin 98-01); Flores v. Doe, 08-1259 (La.App. 5 Cir. 6/23/09), 19 So.3d 1196, writ denied, 09-1628 (La. 10/16/09), 19 So.3d 481 (although disagreeing with the Gingles' result, UM selection form that complied with Duncan requirements upheld as valid, even though the form did not comply with the Commissioner’s then applicable bulletin, because the form did not indicate which of two named insurers would issue the policy)

. "Fundamental and elementary principles recognize that certainty and constancy of the law are indispensable to orderly social intercourse, a sound economic climate and a stable government. Certainty is a supreme value in the civil law system to which we are heirs.” Johnson v. St. Paul Mercury Ins. Co., 256 La. 289, 296, 236 So.2d 216, 218 (1970), overruled on other grounds, Jagers v. Royal Indem. Co., 276 So.2d 309 (La.1973); see Doerr v. Mobil Oil Corp., 00-0947 (La. 12/19/00), 774 So.2d 119, 128-29, opinion corrected on reh’g, 00-0947 (La. 3/16/01), 782 So.2d 573.

. See Justice Weimer's statement in support of rehearing in Duncan, 950 So.2d at 556:
As indicated, the legislature delegated to the Commissioner of Insurance the responsibility to promulgate the UM waiver form. The bulletins provide instructions to insurers for proper completion of the UM form. We should consider these instructions issued by the Commissioner of Insurance regarding the form prepared by the Commissioner of Insurance. Insurers are entitled to rely on these instructions of the Commissioner in this matter.