415 So.2d 641 (1982)
SOUTHERN AMERICAN INSURANCE COMPANY, Plaintiff-Appellant,
v.
Ronald DOBSON, Defendant-Appellee.
No. 8838.
Court of Appeal of Louisiana, Third Circuit.
May 26, 1982.
Mayer, Smith & Roberts, Mark Goodwin and A. J. Gregory, Jr., Shreveport, Stafford, Stewart & Potter, Russell L. Potter, Alexandria, for plaintiff-appellant.
Thomas & Dunahoe, Edwin Dunahoe, Natchitoches, for defendant-appellee.
*642 Before CULPEPPER, FORET and DOUCET, JJ.
FORET, Judge.
This is an appeal from two actions for declaratory judgments which were consolidated for trial[1] as they both raise the identical issue of whether a commercial umbrella liability insurance policy (umbrella policy) or a commercial umbrella excess liability insurance policy (umbrella excess policy) are automobile liability insurance policies such that the insurers issuing these types of policies are required, under the provisions of LSA-R.S. 22:1406 (specifically LSA-R.S. 22:1406(D)(1)(a)), to offer uninsured motorist protection. The trial court held that these types of policies were automobile liability insurance policies and, thus, their issuers were required to offer uninsured motorist protection. We reverse.
Southern American Insurance Company (Southern) and Northeastern Fire Insurance Company of Pennsylvania (Northeastern) are plaintiffs in the above mentioned actions for declaratory judgments that were brought against a common defendant, Ronald Dobson (Dobson). Southern had issued an umbrella policy and Northeastern had issued an umbrella excess policy to the Dobson Pulpwood Company, Inc., the named insured under both policies. The limit of liability set by Southern's policy was $1,000,000.00 above the limits of liability of the underlying insurance policies. The limit of liability set by Northeastern's policy was $2,000,000.00 in excess of the limits of liability set by the Southern policy and the underlying insurance policies.
Dobson was severely injured when the vehicle he was operating, which was owned by the Dobson Pulpwood Company, Inc., was struck by a vehicle owned and operated by Randy L. Walker (Walker), who was underinsured. Aetna Casualty and Surety Company (Aetna) had issued an automobile liability insurance policy to the Dobson Pulpwood Company, Inc., which provided for uninsured motorist coverage up to its policy limit of $100,000.00. As a result of the accident, Aetna paid its policy limit to Dobson.
Dobson instituted a tort action in the Tenth Judicial District Court, Natchitoches Parish, Louisiana, on September 13, 1978, in which the original named defendants were Aetna and Southern. Apparently, Northeastern was also named as a defendant to that action in the second supplemental and amending petition filed therein. In essence, Dobson alleged that both Southern and Northeastern had issued automobile liability insurance policies within the meaning of LSA-R.S. 22:1406(D)(1)(a) and that the policies statutorily provided uninsured motorist coverage up to the limits of bodily injury liability provided therein. In response to their being named defendants to Dobson's tort action, Southern and Northeastern filed these actions for declaratory judgments.
LSA-R.S. 22:1406(D)(1)(a) provides, in pertinent part:
"D. The following provisions shall govern the issuance of uninsured motorist coverage in this state.
(1)(a) No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including *643 death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits."
Plaintiffs contend that the trial court erred in finding that the policies issued by them were automobile liability insurance policies for purposes of LSA-R.S. 22:1406(D)(1)(a). They point to the testimony given by Robert S. Felton, who was accepted by the trial court as an expert on the contents and interpretations of contracts of uninsured motorist insurance.
Dr. Felton explained the nature of the policies issued by plaintiffs and the purposes served by each. He testified, (1) that an umbrella policy does two things. First, it provides for a broad spectrum of coverages for such things as general liability, professional liability, automobile liability, products liability, workmen's compensation liability, etc. Second, it provides higher limits of liability in each coverage area, which coverage being effective once the limits of liability of the underlying insurance policies are exhausted; (2) that an umbrella excess policy simply extends the limits of liability provided for in an umbrella policy and those of the underlying insurance policies. It provides coverage once the limits of liability of the umbrella policy and the underlying insurance policies have been exhausted.
Dr. Felton's opinion was that these types of policies are not automobile liability insurance policies. He noted that these policies provide coverage for the insured's legal liability to third parties, while automobile liability insurance policies provide for first party coverage such as uninsured motorist coverage, medical payments coverage, and physical damage or collision coverage, in addition to coverage for the insured's legal liability to third parties. He also noted that the policies at issue require the party obtaining them to have underlying insurance policies providing limits of liability up to a certain amount for each area of coverage, while automobile liability insurance policies do not require this.
We note that both policies contain language that specifically limits their coverage to those amounts for which the insured may be legally liable to another. There is no premium charged for uninsured motorist coverage, and the evidence indicated that such coverage was unobtainable from plaintiffs under these policies.
Like the trial court and the parties, we are unable to find any jurisprudence of this State pertaining to the particular issue before us. However, plaintiffs point to two cases from other jurisdictions where the issue has been decided in a manner favorable to their position. In Trinity Universal Insurance Company v. Metzger, 360 So.2d 960 (Ala.1978), the Supreme Court of Alabama had before it a case almost identical on its facts to the one before us. Trinity noted the distinction between automobile liability insurance policies and umbrella policies, on page 962, where the court stated:
"Automobile liability policies and motor vehicle liability policies insure against the risk of loss through the operation of specific automobiles. An umbrella policy, on the other hand, is fundamentally excess insurance designed to protect against catastrophic loss. Before an umbrella policy is issued, a primary policy (the "underlying policy") must be in existence and this primary policy must by law provide uninsured motorist coverage. The umbrella policy assumes a risk of much less frequent occurrence, i.e., the risk of judgments in excess of primary policy limits, and accordingly carries premiums which reflect the lesser magnitude of this risk. The umbrella policy issued by Trinity Universal is an inherently different type of insurance from an automobile or motor vehicle liability policy, and consequently does not come within the scope of the uninsured motorist statute.
. . . . .
To reiterate, we simply hold today that an "umbrella policy," clearly intended as excess insurance to protect against catastrophic judgments and issued as supplementary insurance to existing primary policies themselves sufficient to meet the *644 requirements of the law, is neither an automobile liability nor motor vehicle liability policy within the scope of the uninsured motorist statute, even though one of the primary policies may itself insure automobiles."
Plaintiffs also cite O'Hanlon v. Hartford Accident & Indemnity Company, 639 F.2d 1019 (C.C.A. 3rd Cir. 1981), where the court had occasion to interpret a Delaware statute, similar to LSA-R.S. 22:1406(D)(1)(a), requiring issuers of automobile liability insurance policies to offer uninsured motorist coverage. O'Hanlon also determined that umbrella policies were not the same as automobile liability insurance policies for purposes of such statutes. On the other hand, defendant cites two cases from Florida which he contends support his position. These cases are: Aetna Casualty & Surety Co. v. Green, 327 So.2d 65 (Fla. 1st DCA 1976), writ denied 336 So.2d 1179 (Fla.1976); and, Cohen v. American Home Assurance Company, 367 So.2d 677 (Fla. 3rd DCA 1979).[2] We have reviewed these cases and find that they do support defendant's position. However, we disagree with them.
It is clear that LSA-R.S. 22:1406(D)(1)(a) refers only to automobile liability insurance policies and no other types of policies. LSA-R.S. 22:1406(D)(1)(b) provides:
"(b) Any insurer delivering or issuing an automobile liability insurance policy referred to herein shall also permit the insured, at his written request, to increase the coverage applicable to uninsured motor vehicles provided for herein to any amount." (Emphasis ours.)
There are other indications that LSA-R.S. 22:1406(D)(1)(a) refers only to automobile liability insurance policies, e.g., LSA-R.S. 22:1406(D)(1)(c) and LSA-R.S. 22:1406(D) (6).
It is our opinion that policies of the type issued by plaintiffs herein are not automobile liability insurance policies for purposes of LSA-R.S. 22:1406(D)(1)(a) and, therefore, plaintiffs were not required to offer defendant uninsured motorist coverage.
For the above and foregoing reasons, the judgment of the trial court is reversed.
All costs of this appeal, and in the trial court, are assessed against defendant-appellee.
REVERSED.
NOTES
[1] These two consolidated actions are: Southern American Ins. Company v. Ronald Dobson, # 48,884 A, 10th Judicial District Court, Natchitoches Parish, La.; and Northeastern Fire Ins. Co. of Pennsylvania v. Ronald Dobson, # 48,897, 10th Judicial District Court, Natchitoches Parish, La. A separate judgment is this date rendered in Northeastern Fire Ins. Co. of Pennsylvania v. Dobson, 415 So.2d 644, La. App.
[2] Defendant referred to a third case, Aetna Casualty & Surety Co. v. Fulton, decided by the 4th District Court of Appeal of Florida, on August 16, 1978, which supports his position. An incomplete copy of the decision in that case was attached to defendant's brief filed in this Court. However, no citation was provided. At oral argument, defendant cited another Florida case in support of his position, i.e., Home Insurance Co. v. Mendelson, 367 So.2d 1071 (Fla. 3rd DCA 1979).