STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


CA 16-541



LONNY HAYES

VERSUS

VIVIANA TREVINO DE BARTON, ET AL.



**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2014-2431
HONORABLE CLAYTON DAVIS, DISTRICT JUDGE

**********

**ELIZABETH A. PICKETT
JUDGE**

**********

Court composed of Marc T. Amy, Elizabeth A. Pickett, David E. Chatelain,[*] Shannon J. Gremillion, and John E. Connery, Judges.

**Chatelain, J., dissents and assigns reasons.**

**Conery, J., concurs in the result and assigns reasons.**


**REVERSED.**



*Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Randall E. Hart**
**Aaron Broussard**
**Steven Broussard**
**Broussard & Hart, LLC**
**1301 Common Street**
**Lake Charles, LA 70601**
**(337) 439-2450**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
**Lonny Hayes**
**Melissa Hayes**

**John J. Erny, III**
**Casler, Bordelon & Lawler**
**2450 Severn Avenue, Suite 420**
**Metairie, LA 70001**
**(504) 832-3010**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Progressive Insurance Company**

**L. Lane Roy**
**Elizabeth C. Austin**
**Brown Sims, P.C.**
**600 Jefferson Street, Suite 800**
**Lafayette, LA 70501**
**(337) 424-1240**
**COUNSEL FOR DEFENDANT/APPELLANT:**
**Penn Millers Insurance Company**

**PICKETT, Judge.**

Insurer appeals the trial court's grant of summary judgment in favor of the plaintiff, declaring that the uninsured/underinsured motorist (UM) coverage waivers that its insured executed were invalid; therefore, its commercial auto policy included UM coverage for the plaintiffs' damages. For the following reasons, we reverse that judgment.

## FACTS

On June 21, 2013, Lonny Hayes was injured in the course and scope of his employment with O'Neal's Feeder Supply, Inc. when Diana Gonzales failed to obey a traffic sign, and her vehicle collided with the vehicle Mr. Hayes was driving. Ms. Gonzales and the passengers in her vehicle were killed in the collision, and Mr. Hayes suffered severe injuries. When the accident occurred, Mr. Hayes was driving a vehicle owned by O'Neal's and insured by a Louisiana commercial automobile policy of insurance issued by Penn Millers Insurance Company.

Mr. Hayes and his wife sued Ms. Gonzales and her insurer, State Farm Automobile Insurance Company; his own insurer, Progressive Security Insurance Company; and Penn Millers. The plaintffs asserted that State Farm's insurance policy did not provide adequate coverage for their claims and that Progressive's and Penn Millers' insurance policies provided UM coverage for their claims. Penn Millers denied the plaintiffs' claims, asserting that O'Neal's had waived UM coverage for the commercial auto policy it issued in favor of O'Neal's that was in effect on June 21, 2013.

The plaintiffs filed a motion for partial summary judgment on the issue of whether Penn Millers' commercial auto insurance policy provided UM coverage for the plaintiffs' claims. Thereafter, Progressive filed a motion for partial

summary judgment in which it adopted the plaintiffs' motion for partial summary judgment. After a hearing held on January 21, 2016, the trial court granted summary judgment in favor of the plaintiffs, finding no valid rejection or waiver of UM coverage existed for O'Neal's commercial auto policy; therefore, the policy provided UM coverage to O'Neal's Feeder Supply, Inc. on June 21, 2013. The judgment was designated a final judgment as provided in La.Code Civ. P. art. 1915(B)(1). Penn Millers appealed the judgment.

## ASSIGNMENTS OF ERROR

Penn Millers assigns two errors with the trial court's grant of summary judgment in favor of the plaintiffs:

1. The district court erred in finding the UM waiver validly executed in 2007 did not effectively waive coverage on June 21, 2013, the date of [the plaintiff's] accident.

2. The district court erred in finding the UM waiver validly executed in 2011 did not effectively waiver coverage on June 21, 2013, the date of [the plaintiff's] accident.

## DISCUSSION

An appeals court reviews summary judgments de novo, using the same criteria as the trial court. *Gray v. Am. Nat'l Prop. & Cas. Co.*, 07-1670 (La. 2/26/08), 977 So.2d 839. In order to prevail on a motion for summary judgment, the moving party must show that "there is no genuine issue of material fact and that he is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(A)(3).

Generally, interpretation of an insurance contract concerns a legal question that can be resolved in the framework of a motion for summary judgment. *Cutsinger v. Redfern*, 08-2607 (La. 5/22/09), 12 So.3d 945. Insurance policies are interpreted according to the general rules of contract interpretation, and liability insurance policies are interpreted to provide coverage not deny coverage. *Supreme*

2

*Servs. & Specialty Co., Inc. v. Sonny Greer, Inc*., 06-1827 (La. 5/22/07), 958 So.2d 634.

Louisiana law provides that "[n]o automobile liability insurance" policy shall be issued in the state unless it provides UM coverage for persons injured in accidents involving "owners and operators of uninsured or underinsured motor vehicles." La.R.S. 22:1295(1)(a)(i). This law embodies a strong public policy to allow innocent automobile accident victims to fully recover their damages. *Cutsinger*, 12 So.3d 945. "Thus, under the UM statute, the requirement of UM coverage is an implied amendment to any automobile liability policy, even when not expressly addressed, as UM coverage will be read into the policy unless validly rejected." *Duncan v. USAA Ins. Co.*, 06-363, p. 4 (La. 11/29/06), 950 So.2d 544, 547.

The law further provides, however, that a named insured can reject UM coverage or select UM coverage with lower limits. Subsection 1295(1)(a)(ii) sets forth what is required for an insured to waive UM coverage:

> Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. . . . The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. . . . Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.

3

Statutory exceptions to UM coverage must be strictly interpreted, and the insurer must prove that any named insured of the policy properly executed a written wavier rejecting UM coverage equal to bodily injury coverage, selected lower limits, or selected economic-only coverage. *Duncan*, 950 So.2d 544; La.R.S. 22:1295(1)(a)(ii). The supreme court in *Duncan* identified six tasks which must be performed to complete the UM waiver form prescribed by the commissioner of insurance in order to reject UM coverage:

> (1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen (available in options 2 and 4), then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date.

*Duncan*, 950 So.2d at 551. Failure to comply with one of these six tasks results in an invalid rejection of UM coverage. *Duncan*, 950 So.2d 544. Importantly, "[t]he insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver." *Id*. at 553.

### Did the June 5, 2007 UM waiver effectively waive UM coverage June 21, 2013?

In their motion, the plaintiffs argue O'Neal's did not waive UM coverage for the June 21, 2013 accident. Penn Millers contends, however, that O'Neal's executed a valid UM waiver on June 5, 2007, which remained effective as of the date of the accident.

The plaintiffs first assert that the 2007 UM waiver is not valid because it does not contain a policy number. In *Carter v. State Farm Mut. Auto. Ins Co.*, 07-1294 (La. 10/5/07), 964 So.2d 375, the supreme court held that the UM waiver at issue was valid although it did not include the policy number because the commissioner's regulations in effect at that time provided the failure to include a

4

policy number on a UM waiver for a new policy does not render the waiver invalid if the policy number was not available when the waiver was executed. *See also* Commissioner of Insurance LIRC Bulletin 98-03.

Penn Millers introduced the affidavit of the insurance producer who worked with O'Neal's on its commercial auto policy in which the producer attests that the policy number for that policy was not available when O'Neal's representative executed the application and UM waiver form for that policy. Accordingly, O'Neal's June 5, 2007 UM waiver was not invalid because the policy number was not included on the waiver form.

In their second argument, the plaintiffs argue that O'Neal's submitted a new application for coverage each year; therefore, a new policy was issued each year which required the completion of a new UM waiver each year. In support of this argument, they point out that in 2007 and 2008, O'Neal completed commercial auto forms identifying it as "Applicant," and that O'Neal's representatives' signatures on those forms are identified as "Applicant's Signature." Additionally, the plaintiffs reference the fact that while O'Neal's 2011 commercial auto form identified it as the "Named Insured" in the information portion of the form, its signature line was identified as "Applicant's Signature."

The plaintiffs support their position with the UM statute's definition of a new policy: "an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer." La.R.S. 22:1295(1)(a)(ii). This argument does not consider that the renewal of a commercial automobile policy is defined as the "the issuance of . . . a policy succeeding a policy previously issued and delivered by the same insurer or an insurer within the same group of insurers, or the issuance of a certificate or notice

extending the term of an existing policy for a specified period beyond its expiration date." La..R.S. 22:1267(B)(5). Whether an existing policy has been renewed on an application or a new policy has been issued on that application is a fact question. *Guillory v. Progressive Ins. Co.*, 12-1284 (La.App. 3 Cir. 7/3/13), 117 So.3d 318.

Penn Millers contends that it renewed O'Neal's commercial auto policy annually since 2007; therefore, the 2007 UM waiver remained effective the date of the accident. It supports this argument with documentation, including seven forms identified as "Declarations: General Policy Information" that correspond to the policies it issued to O'Neal's beginning in 2007 and continuing through 2013. The 2007 declarations form identifies the insured as O'Neal's, the policy number as PAC 2603726-01, the account number as 00000031ZY, and the limit of insurance as $1 million. The 2007 declarations form also identifies the "Transaction" as "New Policy." Every declarations form after the 2007 form includes the same identification information with one exception: the policy numbers after 2007 are PAC 2603726-02 for 2008 through PAC 2603726-07 for 2013. The last two numbers "02" through '07" reflect the number of years the policy had been in effect. The limit of insurance on each declarations form remained $1 million during those years. Moreover, the 2008-2013 declarations forms identify the "Transaction" as "Policy Renewal Certificate for PAC 2603716-01" through "PAC 2603716-06." This evidence establishes that Penn Millers renewed O'Neal's commercial auto policy each year and did not issue a new policy each year.

The plaintiffs next argue that an increase in O'Neal's limits of liability under the "Umbrella/Excess Section" of Penn Millers' policy in 2009 from $2 million to $3 million required a new UM waiver and that no valid UM waiver form existed at the time of Mr. Hayes' accident. Penn Millers contends that the 2009 increase in

6

O'Neal's general liability umbrella policy limits from $2 million to $3 million did not require a new UM waiver for the commercial auto policy because it is a "General Liability policy that sits over multiple risks[;] it is not a motor vehicle policy."

Penn Millers' argument was addressed in *Southern American Insurance Co. v. Dobson*, 441 So.2d 1185 (La.1983) (on rehearing). The facts in *Dobson* are similar to the facts here: an employee was injured while driving his employer's vehicle and the tortfeasor was underinsured. The employer in *Dobson* maintained UM coverage on its vehicle and had a general liability umbrella policy. Initially, the supreme court held that umbrella and excess policies were not automobile liability insurance policies for the purposes of La.R.S. 22:1406(D)(1)(a), now La.R.S. 22:1295(1)(a)(ii), and that UM waivers were not required for such policies. On rehearing, the court reversed its position, finding general liability umbrella policies "unquestionably apply to liability 'arising out of the ownership, maintenance, or use of a motor vehicle.' That such coverage is made to depend on a primary policy or that the policy contains other provisions which cover other types of losses makes no difference to this central fact." *Id*. at 1190. The supreme court concluded that primary policies and umbrella policies both require written UM waivers. *Id*. *See also Futch v. Commercial Union Insurance Co.*, 93-493 (La. 10/28/1993), 625 So.2d 1019, where the supreme court held that even though the plaintiff's employer's multiperil policy did not provide auto coverage, the employer's umbrella policy provided UM coverage because no valid waiver existed and the umbrella policy "provided 'comprehensive general liability' coverage, including automobile insurance for use of nonowned and hired automobiles." *Id*. at 1020.

The holdings in *Dobson*, 441 So.2d 1185, and *Futch*, 625 So.2d 1019, do not directly address the plaintiffs' argument, but they illuminate the fact that auto policies and umbrella policies are separate and distinct policies for the purpose of UM coverage. Therefore, when O'Neal's umbrella policy limit increased from $2 million to $3 million in 2009, a new UM waiver was required for that umbrella policy. The commercial auto policy did not require a new UM waiver at that time, however, because it provided $1 million coverage from the time of its inception through the date of the accident. Accordingly, we find that the increase in O'Neal's umbrella policy limits did not require a new UM waiver for its commercial auto policy and that the May 16, 2007 UM waiver executed by O'Neal's was valid and remained effective at the time of the June 21, 2013 accident.

## DISPOSITION

For the reasons discussed herein, the judgment of the trial court granting summary judgment in favor of Lonny Hayes, individually and as administrator of the estate of his minor child, Garret Hayes, and Melissa Hayes is reversed. The costs of this appeal are assessed equally to all parties.

**REVERSED.**

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT
### 16-541

## LONNY HAYES

## VERSUS

## VIVIANA TREVINO DE BARTON, ET AL.

**CHATELAIN, Judge, dissenting.**

In this uninsured/underinsured motorist (UM) case, the majority reverses the trial court's grant of summary judgment in favor of Lonny Hayes, individually and as administrator of the estate of his minor child, Garret Hayes, and Melissa Hayes. In doing so, a majority of the panel and the concurring judge, respectively, find the 2007 and 2011 UM waivers of O'Neal's Feeder Supply, Inc. ("O'Neal's") valid; accordingly, they find Penn Millers Insurance Company ("Penn Millers") issued O'Neal's' a commercial auto policy with no UM coverage. For the following reasons, I respectfully dissent.

As more fully explained herein, I find Penn Millers' requirement that O'Neal's annually apply for insurance necessitated successive annual UM waivers because of the claims-made aspect of the policy, or a portion thereof. For different reasons, I also find that a new UM waiver was required when the umbrella portion of the policy, also applicable to the underlying $1 million automobile coverage, increased for the 2009 – 2010 policy period from $2 million to $3 million. And I further find that O'Neal's 2011 UM waiver was invalid because the insurer's name or logo was not inserted on the UM form as the Commissioner of Insurance ("Commissioner") required in LDOI Bulletin No. 08-02.

1

## PENN MILLERS' NEW APPLICATION REQUIREMENT

Louisiana law is clear that the completion of a new application requires the execution of a new UM form. Louisiana Revised Statute 22:1295(1)(a)(ii) effective January 1, 2011 (emphasis added) explicitly provides, in pertinent part:

> Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms. <u>For the purposes of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.</u>

"When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La.Civ.Code art. 9; see also La.R.S. 1:4; *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 00-1695 (La. 6/29/01), 808 So.2d 294. Likewise, with regard to the use of the phrase "a new policy shall mean" in La.R.S. 22:1295, La.R.S. 1:3 provides that "[t]he word 'shall' is mandatory[.]"

This court stated in *Guillory v. Progressive Ins. Co.*, 12-1284, p. 6 (La.App. 3 Cir. 7/3/13), 117 So.3d 318, 323:

> It is incorrect to assert that a new policy can **only** be created when there is a change in liability limits. . . . Another way to enter into a new policy arrangement is further laid out in the statute [La.R.S. 22:1295(1)(a)(ii)]: through completion of an application on the required form.

The *Guillory* decision fully comports with the definition of a new policy for purposes of the UM statute.

Although Penn Millers may have labeled each annual transaction as a "Policy Renewal Certificate," its formulaic designation cannot defeat the substantive provisions of La.R.S. 22:1295(1)(a)(ii) and the legal effect its claims-made requirement had on the parties.

2

In my view, the evidence is clear that each year O'Neal's completed a new application for coverage. A cursory review of the application form Penn Millers annually provided to O'Neal's[1] fully supports my conclusion. In each annual application O'Neal's is referenced as "applicant" and signs at the signature block identified as "Applicant's Signature." Moreover, just above the applicant's signature block appears language, more or less the same each time, that states in each instance that the applicant's personal information is collected "in connection with this application for insurance."

Relying upon the explicit language of La.R.S. 22:1295(1)(a)(ii) and the facts of the present case, I find O'Neal's completed new applications annually that Penn Miller's required. As such I find the 2007 UM selection ineffective as it pertains to the policy of insurance because new UM waivers, except for 2011, were not garnered yearly thereafter.

## 2009-2010 UMBRELLA POLICY INCREASE

Applying *Southern American Insurance Co. v. Dobson*, 441 So.2d 1185 (La.1983) (on rehearing) and *Futch v. Commercial Union Insurance Co.*, 625 So.2d 1019 (La.1993), the majority concludes that although a new UM waiver was required for the umbrella policy, a similar UM waiver was not needed for the underlying commercial auto policy. I disagree.

In *Dobson*, the Louisiana Supreme Court held that the UM statute mandates UM coverage, not only for an automobile liability policy, but for any policy providing automobile liability insurance. In reaching that conclusion, the supreme court reversed this circuit which had concluded that the UM statute required UM coverage only under an automobile liability policy and that umbrella policies were

---

[1] "In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text." La.Civ.Code art. 2056.

not automobile liability policies under the meaning of the UM statute. *Southern American Inc. Co. v. Dobson*, 415 So.2d 641 (La.App. 3 Cir. 1982), *rev'd*, 441 So.2d 1185 (La.1983) and *Northeastern Fire Insurance Co. of Pennsylvania v. Dobson*, 415 So.2d 644 (La.App. 3 Cir. 1982), *rev'd*, 441 So.2d 1185 (La.1983).

There is no doubt that O'Neal's auto policy and its umbrella policy, though separate elements of a single packet of insurance, potentially provide coverage to Hayes, the plaintiff in the present case. Accordingly, in the absence of a valid UM waiver, Hayes would have UM coverage available not only for the $1 million under the underlying auto policy but also the $3 million under the umbrella policy, the amount increased in 2009. Under these facts, I find that the combined overall limits have been increased, resulting in the change in the limits of liability La.R.S. 22:1295(1)(a)(ii) contemplates.[2] Therefore, I suggest a new UM waiver was required when the umbrella policy limit increased for the 2009–2010 policy period.

## VALIDITY OF THE 2011 UM WAIVER

Although the majority opinion does not reach the question of whether O'Neal's 2011 UM waiver was valid, the concurring opinion does address that issue. In that regard, I disagree with the concurrence's conclusion that this purported 2011 UM waiver was valid.

The Louisiana Supreme Court has held the UM statute is liberally construed. *Daigle v. Authement*, 96-1662 (La. 4/8/97), 691 So.2d 1213; *Roger v. Estate of Moulton*, 513 So.2d 1126 (La.1987). The liberal construction given the UM statute

---

[2] In considering the *Dobson* case in the context of La.R.S. 22:1295(1)(c), the anti-stacking provision, the following has been stated:

> The public policy behind UM coverage obviously encourages the purchase of excess coverage. *Layers of primary and excess UM coverage purchased by a single insured is the equivalent of one policy that provides the total limits of liability and should be treated as such under the anti-stacking provision.*

William Shelby McKenzie and H. Alston Johnson III, 15 *La. Civ. Law Treatise, Insurance Law and Practice*, § 4:31 (4th ed. 2012) (emphasis added).

4

requires the statutory exceptions to coverage be interpreted strictly. *Id.* Any exclusion from coverage in an insurance policy must be clear and unmistakable. *Daigle*, 691 So.2d at 1213; *Roger*, 513 So.2d at 1126. In accordance with this strict construction requirement, "[t]he insurer bears the burden of proving any insured named in the policy rejected in writing the coverage equal to bodily injury coverage or selected lower limits." *Tugwell v. State Farm Ins. Co.*, 609 So.2d 195, 197 (La.1992). As stated in *Roger*, 513 So.2d at 1130 (citations omitted):

> The law imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment. Accordingly, to effect a valid rejection of the UM coverage . . . the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer. A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection.

Moreover, in *Duncan v. U.S.A.A. Insurance. Co.*, 06-363, pp. 12-14 (La. 11/29/06), 950 So.2d 544, 552-53, the supreme court stated:

> In directing the commissioner of insurance to prescribe a form, the legislature gave the commissioner the authority to determine what the form would require.
>
> . . . .
>
> We find that, "The expression of a desire not to have UM coverage, however clear, does not necessarily constitute a valid rejection if the expression of rejection does not meet the formal requirements of law," as stated by the First Circuit Court of Appeal in *Cohn*, 03-2820 at p. 5, 895 So.2d at 602, citing *Roger*, 513 So.2d at 1131. As stated above, the legislature gave the commissioner of insurance the authority to create a form and stated that "such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance." Pursuant to that mandate, compliance with the form prescribed by the commissioner of insurance is necessary for the UM waiver to be valid. The insurer cannot rely on the insured's intent to waive UM coverage to cure a defect in the form of the waiver.

5

Effective on or after January 1, 2010, the Commissioner promulgated LDOI Bulletin No. 08-02 and prescribed a new UM waiver form. As applicable to the present case, LDOI Bulletin No. 08-02 provides:

A properly completed and signed Uninsured/Underinsured Motorist Bodily Injury Coverage Form (UM form) creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.

When properly completed and signed by the named insured or his legal representative, this UM form shall be conclusively presumed to become part of the policy or insurance contract when issued and delivered. The current UM form was originally prescribed and distributed by the Commissioner in Bulletin LIRC 98-01. With the exception of a statutory reference correction in Louisiana Department of Insurance (LDOI) Bulletin No. 01-05 Amended, the UM form has remained unchanged since it was issued in Bulletin LIRC 98-01.

### Purpose

The purpose of LDOI Bulletin No. 08-02 is to issue the revised UM form. The revision is in response to the myriad of issues that Louisiana courts have recently examined regarding the current UM form, including, but not limited to, what constitutes a properly completed form, what information must be included prior to the insured's signature, policy identification, company identification and backdating. The revised UM form incorporates changes designed to address these issues and assist both insureds and insurers as well as Louisiana courts.

. . . .

### Important Form Changes

. . . .

• **Policy number and other policy identification information** - The revised UM form includes two boxes on the lower right hand corner of the form.

- The upper box contains an area that the insurer may use for policy information purposes (e.g. policy number, binder number, application number, etc.). This box does not need to be filled in for the form to be properly completed.

- The lower box must contain one of the following: the individual company name, the group name, or the insurer's logo.

6

Considering the insurer's identification requirement at issue herein, I respectfully suggest that the Commissioner's intentions could not have been clearer. First, prior Bulletin 98-01 required the company name be placed at the lower left-hand corner but provided no space for that identifying requirement; Bulletin No. 08-02 addressed that, utilized the emphasized word "must"[3] and the UM form was adjusted accordingly with a special block for such identification on one document. Second, *Gingles v. Dardenne*, 08-2995 (La. 3/13/09), 4 So.3d 799 and *Ashmore v. McBride*, 09-80 (La.App. 3 Cir. 6/3/09), 11 So.3d 720, concluded, under the pre-2010 UM waiver directive, that such waiver was not invalid if the form failed to include the insurer's name; Bulletin No. 08-02 addressed that and made the appropriate adjustments to the UM waiver form.[4]

In light of the well-stated intent of the Commissioner in Bulletin No. 08-02, as well as the legislative grant of authority to the Commissioner to determine the form requirements, I find *Gingles* and *Ashmore*[5] distinguishable. Simply stated, both were decided under facts using the pre-2010 UM waiver form.

---

[3] "Must" is mandatory language. *Singleton v. State, Dep't of Pub. Safety & Corr. ex rel. Elayn Hunt Corr. Ctr.*, 03-1294 (La.App. 1 Cir. 4/2/04), 878 So.2d 555, 556. "[I]f the rules are stated in mandatory language, they must be obeyed and followed." *Fegan v. Lykes Bros. S. S. Co.*, 198 La. 312, 322, 3 So.2d 632, 635 (1941). It is evident that the Commissioner fully thought through this requirement. This is especially true when this proviso is compared with the bulletin's use of the permissive "may" as it pertains to the policy information.

[4] *Borel v. Young*, 07-0419, pp, 7-8 (La. 11/27/07), 989 So.2d 42, 48, *on reh'g* (July 1, 2008) states, in pertinent part:

> A long line of jurisprudence holds that those who enact statutory provisions are presumed to act deliberately and with full knowledge of existing laws on the same subject, with awareness of court cases and well-established principles of statutory construction, with knowledge of the effect of their acts and a purpose in view, and that when the Legislature changes the wording of a statute, it is presumed to have intended a change in the law."

In the present case, the Commissioner, though on the regulatory side, tracks this jurisprudence and makes it clear what changes were made and the reason such changes were required.

[5] Other like cases may be similarly distinguished. *See Dixon v. Direct Gen. Ins. Co. of Louisiana*, 08-907 (La.App. 1 Cir. 3/27/09), 12 So.3d 357 (UM selection form was valid, because it complied with the *Duncan* requirements, even though it did not bear the insurer's

I further observe that unlike *Duncan*, 950 So.2d 544 and *Carter v. State Farm Mutual Automobile Insurance Co.*, 07-1294 (La. 10/5/07), 964 So.2d 375, both cases that relied upon the Commissioner's regulations in reaching their determinations, *Gingles*, 4 So.3d 799, made no such regulatory mention.[6] I respectfully suggest that because of the legislative grant of authority to the Commissioner to prescribe a UM form, the absence of such reference in *Gingles* failed to comport with the analyses utilized in *Duncan* and *Carter* wherein the binding effect of the Commissioner's bulletins were relied upon. *See Clark v. Savoy*, 14-308 (La.App. 1 Cir. 10/15/14) (not published), *writ denied*, 14-2388 (La. 2/6/15), 158 So.3d 821 (holding that when determining the validity of a UM selection form, the Commissioner's then current requirements govern). As the Fifth Circuit stated in *Flores*, 19 So.3d at 1200, "The Commissioner's rules either apply, as found in *Carter*, or they should not apply at all."

Lastly, I suggest that the simple reference in *Gingles,* 4 So.3d at 799, that "the form at issue in these proceedings satisfies all of the requirements of our opinion in *Duncan*[,]"falls short in its analysis. As evidenced by the various form changes that the Commissioner had adopted since *Duncan*, there existed formulaic requirements that were not in existence at the time *Duncan* was decided. In my

name, as required by LIRC Bulletin 98-01); *Flores v. Doe*, 08-1259 (La.App. 5 Cir. 6/23/09), 19 So.3d 1196, *writ denied*, 09-1628 (La.10/16/09), 19 So.3d 481 (although disagreeing with the *Gingles'* result, UM selection form that complied with *Duncan* requirements upheld as valid, even though the form did not comply with the Commissioner's then applicable bulletin, because the form did not indicate which of two named insurers would issue the policy)

[6] "Fundamental and elementary principles recognize that certainty and constancy of the law are indispensable to orderly social intercourse, a sound economic climate and a stable government. Certainty is a supreme value in the civil law system to which we are heirs." *Johnson v. St. Paul Mercury Ins. Co.*, 256 La. 289, 296, 236 So.2d 216, 218 (1970), *overruled on other grounds*, *Jagers v. Royal Indem. Co.*, 276 So.2d 309 (La.1973); *see Doerr v. Mobil Oil Corp.*, 00-947 (La. 12/19/00), 774 So.2d 119, 128–29, *opinion corrected on reh'g*, 00-947 (La. 3/16/01), 782 So.2d 573.

opinion, not to have considered these changes appears to make the Commissioner's rules superfluous.[7]

In conclusion, Louisiana law "imposes UM coverage in this state notwithstanding the language of the policy, the intentions of the parties, or the presence or absence of a premium charge or payment." *Roger*, 513 So.2d at 1131-32. To validly reject the UM coverage "the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer." *Id.* at 1132. In the present case, I find the various legal requirements, including those mandated by the Commissioner, have not been sufficiently met to create a rebuttable presumption that the insured knowingly rejected coverage. Therefore, I would affirm the trial court.

For these reasons, I respectfully dissent.

---

[7] *See* Justice Weimer's statement in support of rehearing in *Duncan*, 950 So.2d at 556:

> As indicated, the legislature delegated to the Commissioner of Insurance the responsibility to promulgate the UM waiver form. The bulletins provide instructions to insurers for proper completion of the UM form. We should consider these instructions issued by the Commissioner of Insurance regarding the form prepared by the Commissioner of Insurance. Insurers are entitled to rely on these instructions of the Commissioner in this matter.

LONNY HAYES

V.

VIVIANA TREVINO DE BARTON, ET AL.

**Conery, J., concurs in the result and assigns reasons.**

I concur with the result reached by the majority. The majority's opinion concluded:

> Therefore, when O'Neal's umbrella policy limit increased from $2 million to $3 million in 2009, <u>a new UM waiver was required for that umbrella policy. The commercial auto policy did not require a new UM waiver at that time,</u> however, because it provided $1 million coverage from time of its inception through the date of the accident. Accordingly, we find that the increase in O'Neal's umbrella policy limits did not require a new UM waiver for its commercial auto policy . . .

Although the auto policy and umbrella policy are two separate policies, unless UM coverage is waived, both would combine to provide coverage to the insured, in this case the Penn Millers driver, Mr. Hayes. The auto limit coverage in the amount of $300,000 remained the same from 2007 − 2013, the date of the accident. Hence the majority is correct that a new UM waiver for the auto policy was not required.

The umbrella policy limits were increased in 2009, hence the combined limits in the auto and UM policies provide new overall underinsured motorist limits in case of a covered motor vehicle accident as here. I would find that a new UM waiver was required when the umbrella limits were increased in 2009, in

keeping with the requirements of the statute, La.R.S. 22:1295.1(a) (ii) effective January 1, 2011 which stated:

> (ii) Such rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage, selects lower limits, or selects economic-only coverage shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage. The form signed by the insured or his legal representative which initially rejects coverage, selects lower limits, or selects economic-only coverage shall remain valid for the life of the policy and shall not require the completion of a new selection form when a renewal, reinstatement, substitute, or amended policy is issued to the same named insured by the same insurer or any of its affiliates. An insured may change the original uninsured motorist selection or rejection on a policy at any time during the life of the policy by submitting a new uninsured motorist selection form to the insurer on the form prescribed by the commissioner of insurance. **Any changes to an existing policy, regardless of whether these changes create new coverage, except changes in the limits of liability, do not create a new policy and do not require the completion of new uninsured motorist selection forms.** For the purpose of this Section, a new policy shall mean an original contract of insurance which an insured enters into through the completion of an application on the form required by the insurer.

I would respectfully submit that a discussion of whether the 2007 UM waiver was still valid is no longer at issue because a new UM waiver was actually signed in 2011, after the combined underinsured motorist limits were effectively increased in 2009 by an increase in umbrella coverage for a covered motor vehicle underinsured motorist claim. We need decide only whether the 2011 UM waiver was valid, as regardless of whether a new UM waiver was required in 2009 after the umbrella limits were increased, it is undisputed that in fact a new UM waiver was signed in 2011.

Plaintiff and Progressive, appellees, challenge the 2011 waiver alleging non-compliance with the commissioner's waiver form, LDO1 Bulletin No. 08-02, effective on or after January 1, 2010. The new UM waiver form replaced the UM form issued with Bulletin LIRC 98-1, which had failed to include a space on the form for the name of the insurer. The applicable statute was amended and became effective on January 1, 2011. It continued to empower the State Insurance Commissioner to develop a form for waiver of UM coverage and mandated that all insurance carriers use that form should a client wish to waive UM coverage.

Appellees argue that the 2011 UM waiver is invalid because the name or logo of the insurer was not inserted properly on the commissioner's form as required by the following language in LDOI Bulletin No. 08-02:

> *POLICY NUMBER AND OTHER POLICY INDENTIFICATION INFORMATION – The revised UM form includes two boxes on the lower right hand corner of the form.
>
> *The upper box contains an area that the insurer may use for policy information purposes (e.g. policy number, binder number, application number, etc.) The box does not need to be filled in for the form to be properly completed.
>
> **\*The lower box must contain one of the following: the individual company name, the group name, or the insurer's logo.** (Emphasis added.)

It is undisputed that the company name, group name, or logo was not included in a "box on the lower right hand corner of the form." However, as pointed out by defendant/appellants, the waiver is identified with the company logo and the word ACORD, the company's group name, on the first page. In fact "ACORD" is printed at the bottom of the five page form on every page. The name of the insured, the insurer, and the policy number are also clearly included on the waiver form on page one, along with Mr. O'Neal's initials clearly rejecting UM

coverage. I would find that the 2011 UM waiver is a valid waiver, despite the lack of a logo or name of the insurer in the "lower box" on page four (4) of the 2011 waiver form executed and initialed by the insured, Mr. O'Neal.

It is clear that the underlying purpose of the inclusion of the name or logo is to provide notice to the insured of the name of the carrier providing coverage on the UM waiver form itself, without looking anywhere else. Again, the 2011 waiver form included on page one the name of the insured, O'Neal's Feeder Supply, Inc., the name of the carrier, Penn Millers Insurance Company, and the Policy Number PAC280371604, all clearly typed on the first page of the UM waiver Form. The company logo and company name, ACORD, are clearly included and the ACORD name appears on the bottom of every page of the form.

Considering the foregoing, there is no evidence to suggest that the insured, Mr. O'Neal, did not intend to waive UM coverage, or was confused by the form. There is uncontradicted evidence in this summary judgment case that Mr. O'Neal intended to and did waive UM coverage by initialing and signing the 2011 UM waiver form. Therefore I would find the 2011 waiver comports with the requirements of the commissioner and meets the requirements for a valid UM waiver pursuant to La.R.S. 22:1295.1(a)(ii), effective January 1, 2011, and *Duncan v. U.S.A.A. Ins. Co.*, 06-544 (La. 11/29/06), 950 So.2d 544.

In *Gingles v. Dardenne*, 08-2995 (La. 3/13/09), 4 So.3d 799, the supreme court found in favor of the insurer, despite its failure to complete the UM rejection form with the name of the company in **the lower left hand corner** as required by Bulletin LIRC 98-01 then in effect. *Ashmore v. McBride*, 09-80 (La. App. 3 Cir. 6/3/09), 11 So.3d 720, followed *Gingles* and found the failure of the insurer to

place its name in the lower left hand corner of the UM rejection form did not invalidate the client's rejection of UM coverage.

In *Alvarez v. LeBlanc*, 09-417 (La.App. 5 Cir. 1/26/10), 31 So.3d 1120, our sister circuit likewise found that failure to include the name of the insurer on the lower left hand corner of the UM waiver did not render the UM form invalid, following *Gingles* and *Duncan*.

In *Scarborough v. Randle*, 12-1061, p. 5 (La.App. 3 Cir. 2/16/13), 109 So.3d 961, 965, a panel of our court found the UM waiver form entitled "La Auto Supplement" was a valid UM rejection form, following the supreme court decision in *Banquer v. Guidroz*, 09-466 (La. 5/15/09), 8 So.3d 559, which "declined to apply a hypertechnical interpretation of the *Duncan* requirements." In *Banquer*, the supreme court found a valid waiver of UM coverage based on a UM waiver form "containing the signature without the printed name of the legal representative of the corporate insured." *Scarborough*, 109 So.3d at 561.

In *Nova Cas. Co. v. Guy's Towing Serv.,Inc.*, 2015 WL 3463646, a federal district court case applying Louisiana law, the trial court found a valid UM waiver when the policy number was not placed on one page of the form. The court stated the "form appears to comply with the requirements of the less-than-precise language of La.Rev.Stat. § 22:1295(1)(a)(ii), and with the instruction of Duncan." *Id* at p. 7.

I would, therefore, find that the 2011 UM waiver was valid.

The Multiple "Application" New Policy Issue.

The accident occurred in 2013 and was covered by the 2013 policy renewal. Appellees argue that regardless of whether the 2011 UM waiver was valid, the 2013 policy covering this accident was not a "renewal" and was in fact a "new"

policy because Penn Millers required the insured to sign a new "application" for insurance coverage every year. Hence a new UM waiver was required each year and Penn Millers could not rely on the 2011 waiver. A new "application" would normally mean that each year Penn Millers and O'Neal's engaged in negotiations culminating in the issuance of a "new policy" with new terms and conditions and coverage limits.

In this case, I would find that the "application form" was in effect, a renewal of existing coverages. The umbrella policy limits, which were changed in 2009 from $2 million to $3 million, were not changed in 2011, 2012, or 2013. As previously stated, the underlying auto liability limits remained unchanged since 2007. The majority correctly summarized the uncontradicted evidence on this issue and concluded: "This evidence establishes that Penn Millers renewed O'Neal's commercial auto policy each year and did not issue a new policy each year."

## CONCLUSION

I concur in the result, finding that O'Neal properly rejected UM coverage, but on the basis that the 2011 uninsured motorist waiver was a valid waiver and applied on the date of the accident in 2013. The policies were renewed in 2012 and 2013 and were not "new" policies requiring new UM rejection forms.